```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE EASTERN DISTRICT OF MISSOURI

 3

 4    THE UNITED STATES OF AMERICA,

 5              Plaintiff,

 6    vs.                             No. 4:09-CR-360 CDP

 7    JAMES VERNON JOSEPH, JR.,

 8              Defendant.

 9    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

10    PRESENT:   The Honorable Catherine D. Perry, Presiding

11    ATTORNEY FOR PLAINTIFF:  Howard J. Marcus, Assistant United
      States Attorney
12
      ATTORNEY FOR DEFENDANT:  Joel J. Schwartz
13

14

15

16

17                      Change of Plea Hearing

18                         July 30, 2009

19

20

21

22

23
                        TERI HANOLD HOPWOOD, RMR, CRR
24                      Thomas F. Eagleton Courthouse
                          111 South Tenth Street
25                         St. Louis, MO  63102
```

1            THE COURT:  We're here in the case of United States

2    of America versus James Vernon Joseph, Junior, Case Number

3    4:09-CR-360.  Mr. Joseph is here in person and with his

4    attorney, Mr. Schwartz, and the Government is here through Mr.

5    Marcus.

6        Mr. Joseph, the lawyers tell me you intend to plead

7    guilty to an indictment that's been brought against you.  Is

8    that why you're here today?

9            THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  Before I accept your guilty plea, I'm

11   going to ask you some questions, and I'm going to have you

12   placed under oath before I ask you those questions.  Once you

13   have sworn to tell the truth, your answers to my questions are

14   subject to the penalties of perjury.  Do you understand that?

15            THE DEFENDANT:  Yes, Your Honor.

16            THE COURT:  Swear the defendant.

17                JAMES VERNON JOSEPH, JR.,

18        having been duly sworn, testified as follows:

19                        EXAMINATION

20   BY THE COURT:

21   Q.  Would you state your full name, please?

22   A.  James Joseph.  James Vernon Joseph, Junior.

23   Q.  Is that your actual name?

24   A.  Yes.

25   Q.  How old are you, sir?

1    A.   I'll be 45 in August, August 28th.   I'm 44.

2    Q.   How far did you go in school?

3    A.   Eleventh grade.

4    Q.   Do you have a GED?

5    A.   No, I was going to take the GED program once I got all the

6    proceedings taken care of.

7    Q.   Do you read and write?

8    A.   Yes.

9    Q.   Are you currently under the care of a doctor or

10   psychiatrist for any reason?

11   A.   No.

12   Q.   Do you take any medicines on a regular basis?

13   A.   No.

14   Q.   Within the last 24 hours, have you taken any medicines or

15   drugs or drunk any alcohol?

16   A.   No, Your Honor.

17            THE COURT:  Does either counsel have any doubts as

18   to the defendant's competence to proceed?

19            MR. MARCUS:  No.

20            MR. SCHWARTZ:  No.

21   Q.   (By the Court) Mr. Joseph, you're charged in a one-count

22   indictment, and the Grand Jury charged on or about May the 5th,

23   2009, in Bridgeton, Missouri, in this district, that you

24   knowingly possessed with intent to unlawfully use five or more

25   false identification documents, and that this affected

1    interstate commerce.  Do you understand that that is what you

2    are charged with?

3    A.  Yes, Your Honor.

4    Q.  This is a felony, and you are entitled to be represented by

5    counsel at all stages of the proceedings, and if you can't

6    afford a lawyer, one will be appointed for you.

7         You are here today with Mr. Schwartz.  Have you had

8    enough time to discuss your case with him?

9    A.  Yes, Your Honor.

10   Q.  Are you satisfied with his representation of you?

11   A.  Yes, Your Honor.

12   Q.  Is there anything you've wanted him to do in representing

13   you that he has failed or refused to do?

14   A.  No, Your Honor.

15   Q.  Let me tell you the rights would you have if you went to

16   trial.  You do not have to plead guilty.  You have a right to

17   plead not guilty and go to trial.  You'll be giving up that

18   right if you plead guilty here today.  Do you understand that

19   if you plead not guilty, you would be entitled to a speedy and

20   a public trial by a judge or a jury?

21   A.  Yes, Your Honor.

22   Q.  And at trial, if you went to trial, you would be presumed

23   innocent, and the Government would have to prove you guilty by

24   competent evidence and beyond a reasonable doubt.  You would

25   not have to prove that you were innocent.  It would be the

1  Government's burden to try to prove that you were guilty, and

2  they would try to do that by bringing in witnesses who would

3  testify in your presence.  You could hear what the witnesses

4  against you had to say.  Your attorney could cross-examine the

5  Government's witnesses, and could object to the Government's

6  evidence, and your attorney could offer evidence and subpoena

7  witnesses on your behalf.

8       You could testify at a trial if you wanted to, but you

9  would not have to.  If you decided not to testify, there

10  couldn't be any suggestion made to the jury or any inference

11  drawn by them that you were guilty because you didn't take the

12  stand.

13       So those are the things that would happen if you pleaded

14  not guilty and went to trial.  Do you understand those rights?

15  A.  Yes, Your Honor.

16  Q.  Do you understand that if you plead guilty here today,

17  you'll be waiving your right to trial and the other rights I've

18  just described?

19  A.  Yes, Your Honor.

20  Q.  In other words, there won't be any trial.  Judgment of

21  guilty will be entered on this plea just the same as if you had

22  been convicted by a jury.  Do you understand that?

23  A.  Yes, Your Honor.

24  Q.  Has anyone threatened you or forced you in any way to get

25  you to plead guilty?

1    A.  No, Your Honor.

2    Q.  The lawyers have given me a document called Plea Agreement,

3    Guidelines Recommendations, and Stipulations.  Do you have a

4    copy of that there in front of you?

5    A.  Yes, Your Honor.

6    Q.  It's got your name on the front, and over on the last page,

7    which is page 15, there are three signatures.  Mr. Marcus, the

8    prosecutor, signed up at the top, and Mr. Schwartz, your

9    lawyer, signed at the bottom, and there's a signature in the

10   middle above where your name is typed.  Is that your signature?

11   A.  Yes, Your Honor.

12   Q.  Did you sign this document here today?

13   A.  Yes, Your Honor.

14   Q.  Did you read it and discuss it with your lawyer before you

15   signed it?

16   A.  Yes, Your Honor.

17   Q.  Is everything in this document true to the best of your

18   knowledge and understanding?

19   A.  Yes, Your Honor.

20   Q.  Is there anything in this document that you disagree with

21   or you don't understand?

22   A.  No, Your Honor.

23   Q.  Have there been any other promises made to you to get you

24   to plead guilty, or agreements entered into with you about your

25   guilty plea that aren't written down in this document?

1    A.   No, Your Honor.

2    Q.   I want to turn over to page -- it starts at the bottom of

3    page 9, the heading is there, and talking about the elements of

4    the offense, but the elements are really listed on page 10.

5    Elements of the offense means the things the Government would

6    have to prove in order for you to be guilty of this crime.

7         In this case, those things are that you possessed five

8    or more false identification documents, that you did that

9    knowingly and willfully with the intent to use those documents

10   unlawfully, and that your possession of those identification

11   documents was in or affecting commerce.

12        Now, the maximum penalty for this is imprisonment of not

13   more than 20 years, a fine of not more than $250,000, or both

14   imprisonment and a fine, and there is a period of supervised

15   release of not more than three years.  There is also a $100

16   mandatory special assessment, and restitution would be required

17   if there is known loss.  So do you understand the maximum

18   penalties you are facing in this case?

19   A.   Yes, Your Honor.

20   Q.   Now, the sentence will also be affected by the Sentencing

21   Guidelines.  The Guidelines are a set of rules that apply

22   points to different things, and when we apply the Guidelines to

23   your case, we end up with a result that's called the Sentencing

24   Guidelines range, and that's the range of jail time that the

25   Guidelines are recommending in your case.

1          The Guidelines have listed in them some things called

2     departures.   Those are specific reasons listed in the

3     Guidelines that I could give you either a higher or a lower

4     sentence.

5          The Guidelines are an advisory system, and what that

6     means is I do not have to follow recommendations of the

7     Guidelines.  What I do have to do is figure out what the

8     Guidelines recommend, then determine whether you're eligible

9     for any departures for the reasons listed in the Guidelines,

10    and then I'm allowed to consider other facts about you and your

11    crime and the purposes of sentencing in order to achieve a just

12    sentence.

13         To help me do all that, we'll have a Presentence Report

14    prepared by the Probation Office, and the Presentence Report

15    will have a lot of information about you and your background

16    and the crime in this case.  It will also have a section where

17    the probation office will calculate the Sentencing Guidelines.

18    You and your lawyer and the Government lawyer will get copies

19    of the Presentence Report before sentencing, and both sides

20    have a right to object to the Presentence Report if they think

21    anything in there is incorrect, and you should object if you

22    think there is anything in there that's wrong.

23         I will not sentence you until I have reviewed the

24    Presentence Report, have ruled on any objections that either

25    side might file, and then I also have heard anything you wish

1    to say at the time of sentencing.  So those are all the things

2    that go into the sentencing process.  Do you understand

3    generally how that works?

4    A.  Yes, Your Honor.

5    Q.  Do you understand that I don't know enough about you or

6    your case at this point to know what your sentence will be, and

7    I'm not promising you any particular sentence or any particular

8    Guidelines?  You understand that?

9    A.  Yes, Your Honor.

10   Q.  All right.  Let's go through the plea agreement beginning

11   on page 2 at the top.  On the top it says in exchange for your

12   guilty plea to this indictment, the Federal Government is

13   agreeing not to bring any other prosecution in this district

14   related to your fraud with identification documents, or with

15   regard to your transporting of women, adult females for the

16   purpose of prostitution between May 4, or the time period May 4

17   and May 5 of 2009 if it's something they have already agreed --

18   already know about.  So, in exchange for your guilty plea, they

19   are agreeing not to bring any other federal charges in this

20   district against you.  Do you understand that?

21   A.  Yes, Your Honor.

22   Q.  Now, it says at the bottom you all have made some

23   recommendations to me about the Sentencing Guidelines, and that

24   you're asking me to follow these recommendations, and you're

25   saying that neither side is going to ask for a sentence outside

1    the Sentencing Guidelines range that results from these

2    recommendations.  So do you understand you're agreeing to that?

3    A.  Yes, Your Honor.

4    Q.  On page 3, there is a waiver of post-conviction rights, and

5    this is a very important part of your plea agreement.  Whenever

6    someone pleads guilty, they are giving up the right to appeal

7    whether they are guilty or not, and anything that's happened up

8    until this point.  That just happens automatically when you

9    plead guilty, you can't plead guilty and then go back and

10   challenge something that's already happened in the case.  Do

11   you understand that?

12   A.  Yes.

13   Q.  In this case, however, in addition, you and the Government

14   are both giving up the right to appeal your sentence, because

15   even though you plead guilty, if you didn't have this provision

16   of your plea agreement, then you could either -- you or the

17   Government could appeal the sentence in the case.  In this

18   case, what you're saying is as long as I follow the

19   recommendations you've made in here, and I sentence you within

20   the Sentencing Guidelines range that results from those

21   recommendations, then both you and the Government are giving up

22   your right to appeal the sentence.  So do you understand that

23   you're giving up that right?

24   A.  Yes, Your Honor.

25   Q.  You're also giving up your right to file a habeas corpus or

1    a post-conviction motion.  That's a motion where you would come

2    back to me later and say you thought your rights had been

3    violated, and you're giving up the right to do that unless you

4    later find out something that you believe is prosecutorial

5    misconduct or ineffective assistance of counsel.  Do you

6    understand that?

7    A.  Yes, Your Honor.

8    Q.  Now, on page 4 it also says that you understand you're

9    giving up your right to object to any request for records or

10   information that might be sought under any federal law from the

11   Government.  In other words, if the United States agencies

12   should receive a Freedom of Information Act request or any

13   other request for information, you are giving up your right to

14   object to the provision of information.  Do you understand

15   that?

16   A.  I'm not quite sure.

17           THE COURT:  I'm looking at it and wondering, too,

18   because I haven't seen it before, Mr. Marcus.  Do you want to

19   tell me the intent of that provision on page 4, the right to

20   records?

21           MR. MARCUS:  It waives his right to seek records

22   under the Freedom of Information Act from the Government

23   relative to this case.

24           THE COURT:  It waives his right to seek that.  I

25   said that wrong.  I apologize, Mr. Joseph.  What it says is

1    that you're agreeing that you will not seek any records about

2    this case from the Government.  In other words, you won't come

3    and say, "I want to see all the police reports or the other

4    records in the case, whatever they might be."  Do you

5    understand that?

6    A.  Yes, Your Honor.

7          MR. SCHWARTZ:  Can I have one second with him?  I

8    want to explain why it's there.

9          THE COURT:  Why is it there?

10          MR. SCHWARTZ:  Your Honor --

11          MR. MARCUS:  My understanding, from our perspective,

12    it's something new that has been inserted in pleas, and it has

13    to do with the cost and the effort and production of documents.

14    This is my opinion of why they have included it, because it

15    usually involves bringing things back from archives, the

16    expense of copying and transporting all these documents again.

17          MR. SCHWARTZ:  My impression why it was there in

18    this case, and I did not talk to Mr. Marcus about it, but I

19    thought it had to do with the specific nature of this case.

20          THE COURT:  I assumed it did, too.

21          MR. SCHWARTZ:  But we don't have an objection to it.

22          MR. MARCUS:  It doesn't in terms of he's got

23    discovery and all the materials in any event.

24          THE COURT:  So let me make clear, though, that I

25    understand that Mr. Schwartz, you did receive the Government's

 1   discovery in this case, and you had time to discuss that with

 2   Mr. Joseph, correct?

 3              MR. SCHWARTZ:  That is correct.

 4   Q.  (By the Court) Mr. Joseph, you're satisfied that you've

 5   seen the discoverable information in this case, so you know

 6   basically at least somewhat the evidence the Government had

 7   against you and have discussed that with Mr. Schwartz?

 8   A.  Yes, Your Honor.

 9   Q.  Okay.  So, in doing it, in including this, you're simply

10   giving up your right to ask -- file a Freedom of Information

11   Act or privacy act request in the future.  Do you understand

12   that?

13   A.  Yes, Your Honor.

14   Q.  Okay.  And then it goes on to say you'll provide certain

15   information to the Government, or to the Probation Office, and

16   they can share that with the Government lawyers, and then on

17   page 5, it says that you understand nothing in this document

18   limits the rights of the Government to take civil, tax,

19   administrative, or forfeiture action against you if they

20   thought they had the right to do so, and specifically, that you

21   agree to forfeit any property that might have been seized by

22   the Government during their investigation, and that would

23   include specifically $7,442.98 in currency that was seized by

24   law enforcement during the investigation, but it would include

25   any other property that they might have taken.

1         MR. MARCUS:  If I can clarify that on page 6, the

2    defendant has asked that we return his photography equipment,

3    his cameras, personal videos, and DVDs, and we had agreed not

4    to forfeit those items.

5         THE COURT:  You're agreeing to turn those back over

6    to him except to the extent they included illegal things?

7         MR. MARCUS:  Exactly.

8         THE COURT:  So they are agreeing to turn that back

9    over to you, but what is listed in here is camera, photography

10   and equipment, and personal videos, and DVDs, but other than

11   that, you're giving up your right to receive any property back.

12   Do you understand that?

13   A.  Yes, Your Honor.

14   Q.  At the bottom of page 6 is the section where you have made

15   the recommendations you're making to me about the Sentencing

16   Guidelines, and the heading on that says, "Guidelines

17   recommendations not binding on the Court," and what that "not

18   binding on the Court" means is that I don't have to follow

19   these recommendations if I decide they are not correct.  I

20   never promise to follow them at this stage.  I have to wait

21   until I get the Presentence Report to know whether I will

22   follow these or not.  If for some reason I don't follow them,

23   you would not be able to withdraw your guilty plea and start

24   all over again because I didn't follow these recommendations.

25   Do you understand that?

1  A.  Yes, Your Honor.

2  Q.  Now, this says that you all are recommending that the base

3  offense level in this case is a level 14 because you believe

4  that the cross reference -- there is a cross reference that

5  should apply, and then the Government is agreeing that you have

6  accepted responsibility for your criminal conduct, so there

7  will be two levels taken off.  So you all are recommending to

8  me that the total offense level in the case would be 12.  So

9  that's the recommendation you're making.  Do you understand

10  that?

11  A.  Yes, Your Honor.

12  Q.  And again, I need to review, especially with the cross

13  reference, I don't know exactly how that works, but the

14  probation office will reach a conclusion.  When they provide

15  the Presentence Report, if you or your lawyer thinks what they

16  have concluded is incorrect, you can file objections, but

17  otherwise, I will wait until I get the Presentence Report to

18  review all of that.  Do you understand that?

19  A.  Yes, Your Honor.

20  Q.  Okay.  Now, the stipulation of facts that relates to the

21  sentencing is on pages 8 and 9.  Did you go over that carefully

22  with your lawyer?

23  A.  Yes, Your Honor.

24  Q.  Do you agree that all the facts set out there are true and

25  that's actually what happened in this case?

1   A.  Yes, Your Honor.

2   Q.  Okay.  Now, with regard to -- it sets out the circumstances

3   of what happened on May the 3rd, and then it says that on page

4   9, it says that they recovered false identification documents,

5   the police did, that had your photograph, and that those

6   included a Nevada state identification card in the name of Gary

7   Maurice Stalworth, a North Carolina driver's license in another

8   name, a Costco card in the name of Gary Stalworth, Las Vegas

9   Athletic Club card in the name of Gary Stalworth, a Visa debit

10  card in the name of Gary Stalworth, a Las Vegas Metropolitan

11  Police Department gun registration, but they didn't find a gun,

12  and a birth certificate and Social Security card in the name of

13  someone else, with initials of ANS, and it says that you agree

14  that all of those were things you possessed, and that you agree

15  you did not have authorization to possess those documents.  Is

16  that true?

17  A.  Yes, Your Honor.

18  Q.  And then it says that you agree that the possession of

19  these documents did affect interstate commerce.  Do you agree

20  with that?

21  A.  Yes, Your Honor.

22  Q.  Let me see, and you knew you had those documents and

23  intended to use them in some unlawful way, is that correct?

24  A.  Yes, Your Honor.

25          THE COURT:  Okay.  Let me ask you this, Mr. Marcus.

1   Does that cover the elements of the offense?

2          MR. MARCUS:  Yes, it does, Your Honor.

3   Q.  (By the Court) Then on page 8, leading up to that, and

4   under the stipulation of facts, you said this stuff was all

5   true, Mr. Joseph, but I want to make sure that you agree that

6   it is, this talks about what happened when the police came to

7   the Crown Plaza in Bridgeton, and that there were some women

8   there, and one woman in particular who advised that you had

9   brought her from Dayton, Ohio for the purpose of prostitution,

10  and also that you had taken some videos of her, and that you

11  had kept her driver's license, and she had no money, so she

12  couldn't leave, and basically you had Jane Doe, the person

13  listed as Jane Doe I, as well as others, that you had brought

14  her for the purpose of engaging in prostitution.  And so that's

15  listed here.  It's not what you're charged with, but I want to

16  make sure you understand when it's listed here it's here

17  because I assume that's why the Government is recommending a

18  cross reference in the Sentencing Guidelines, and this is

19  something that can be -- if you're agreeing to it here, and

20  you're telling me it's true, it's something that can be

21  considered as part of the sentencing process.  Do you

22  understand that?

23  A.  Yes.

24  Q.  And you agree it's true?

25          MR. SCHWARTZ:  Can I talk to him for a second?

1    Q.  (By the Court) Mr. Joseph, do you agree that those facts

2    are true?

3    A.  Yes, Your Honor.

4    Q.  And again, I don't know how the Sentencing Guidelines on

5    this works, but I know given your admission, that means if the

6    Guidelines do say I should consider that cross reference, then

7    there is a factual basis for me to do so.  So, anything further

8    with regard to the case that I should be asking about?

9              MR. MARCUS:  No, Your Honor.

10             THE COURT:  Mr. Schwartz?

11             MR. SCHWARTZ:  No, Your Honor.

12   Q.  (By the Court) So, Mr. Joseph, in answering my questions

13   here today under oath and signing this document, you have told

14   me enough for me to accept your guilty plea to this charge of

15   possession of false identification documents, but I have not

16   done that yet.  I want to make sure that we have gone through

17   all your rights, and talked about the trial rights and

18   everything else, the sentencing process, that you really do

19   want to plead guilty instead of going to trial.  Do you still

20   want to plead guilty?

21   A.  Yes, Your Honor.

22   Q.  Is anybody forcing you or making you do this?

23   A.  No, Your Honor.

24   Q.  Then let me ask you formally and for the record how you

25   plead to the charge set forth in the indictment, guilty or not

1    guilty?

2    A.  Guilty.

3              THE COURT:  All right.  I will accept your guilty

4    plea.  I find that you are competent to enter this plea, you

5    understand your rights, and you know what you're doing, and

6    you're entering the plea voluntarily, and the plea has a

7    factual basis that contains all the elements of the crime.

8              So, I will accept your guilty plea, and I will set your

9    case for sentencing on Tuesday, October 20th at 1:00 p.m.  Any

10   objections to the Presentence Report will be due three weeks

11   before, or September 21st, and any sentencing memorandum will

12   be due one week before.  So, October 20th at 1:00 p.m. for

13   sentencing.  Anything further?

14             MR. MARCUS:  No, Your Honor.

15             MR. SCHWARTZ:  Judge, you said is there anything

16   else.  I don't recall you going over his trial rights.

17             THE COURT:  I wonder if I did.  I think I did.  Let

18   me do this again, Mr. Joseph.  You understand that if you went

19   to trial, you would be presumed innocent and the Government

20   would have the burden of proving you guilty.  Do you understand

21   that?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And also the Government would bring in

24   witnesses, and you would hear what they had to say, and your

25   attorney could cross-examine them.  In other words, you would

1    have the right to confront the witnesses, and your lawyer could

2    subpoena witnesses and put on evidence on your behalf if you

3    went to trial.  Do you understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Additionally, you wouldn't have to

6    testify at a trial.  You have a right, a privilege against

7    self-incrimination, and also there is no burden on a defendant

8    to prove anything in a criminal trial, so you wouldn't have to

9    testify, and you couldn't -- no one could tell the jury that

10   there was anything -- that they could draw any inference or

11   suggest to the jury that you were guilty because you did not

12   take the stand if you did not testify.  Do you understand that?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  All right, you understand when you plead

15   guilty here today, you are giving up your right to a jury trial

16   or a bench trial.  You're giving up all rights to trial in the

17   case.

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Okay.  In case I didn't, because I might

20   not have.  All right.  Then the defendant is remanded to the

21   custody of the marshals pending the sentencing on October 20th

22   at 1:00 p.m.

23                  (A recess was taken.)

24

25

1                    REPORTER'S CERTIFICATE

2          I, TERI HANOLD HOPWOOD, RMR, CRR, Official Court

3   Reporter for the United States District Court for the Eastern

4   District of Missouri do hereby certify that the foregoing is a

5   true and correct transcript of the proceedings had in this

6   cause as same appears from my stenotype notes made personally

7   during the progress of said proceedings.

8

9                         /S/ Teri Hanold Hopwood, RMR, CRR

10                        TERI HANOLD HOPWOOD, RMR, CRR

11                        Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25